EXECUTION VERSION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| DAVID RONGE, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. 1:18-cv-07030 **(Consolidated)** |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | Judge Rebecca R. Pallmeyer |
| CAMPING WORLD HOLDINGS, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

SETTLEMENT AGREEMENT

4815-4746-4375.v2

This Settlement Agreement dated March 12, 2020 (the "Stipulation" or the "Settlement Agreement"), submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure and Rule 408 of the Federal Rules of Evidence, embodies a settlement (the "Settlement") made and entered into by and among the following Settling Parties: (i) Lead Plaintiffs City of Pontiac General Employees' Retirement System, Oklahoma Police Pension & Retirement System, and City of Omaha Police & Fire Retirement System ("Lead Plaintiffs"), on behalf of themselves and each of the members of the Class, as defined in ¶¶1.3-1.4, *infra*, on the one hand, and (ii) Defendants Camping World Holdings, Inc. ("Camping World" or the "Company"), Marcus A. Lemonis, Thomas F. Wolfe, Brent L. Moody, Stephen Adams, Crestview Partners II GP, L.P., Crestview Advisors, L.L.C., Andris A. Baltins, Brian P. Cassidy, Mary J. George, Daniel G. Kilpatrick, Howard A. Kosick, Jeffrey A. Marcus, K. Dillon Schickli, Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Credit Suisse Securities (USA) LLC, Robert W. Baird & Co. Incorporated, BMO Capital Markets Corp., KeyBanc Capital Markets Inc., Stephens Inc. and Wells Fargo Securities, LLC (collectively, "Defendants") on the other hand, by and through their counsel of record in the above-captioned consolidated litigation pending in the United States District Court for the Northern District of Illinois (the "Action"). The Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims, upon and subject to the terms and conditions hereof and subject to the approval of the Court. Throughout this Stipulation, all capitalized terms used, but not immediately defined, have the meanings given to them in Section IV.1, *infra*.

## I.    THE ACTION

This case is currently pending before the Honorable Rebecca R. Pallmeyer in the United States District Court for the Northern District of Illinois (the "Court") and was brought on behalf of the Class (to be certified for settlement purposes) of all Persons who purchased or otherwise

acquired Camping World publicly traded Class A common stock during the period from October 6, 2016 through August 7, 2018, inclusive, including those who purchased or acquired shares of Camping World Class A common stock in the Company's initial public offering, which occurred on or around October 6, 2016 ("IPO"), and/or in the Company's secondary offerings, which occurred on or around May 26, 2017 and October 27, 2017, and who were allegedly damaged by Defendants' alleged conduct. The initial complaint was filed on October 19, 2018, and on January 17, 2019, the Court appointed City of Pontiac General Employees' Retirement System, Oklahoma Police Pension & Retirement System, and City of Omaha Police & Fire Retirement System as Lead Plaintiffs and the firms Robbins Geller Rudman & Dowd LLP and Labaton Sucharow LLP as Lead Counsel. On February 27, 2019, Lead Plaintiffs filed the Consolidated Complaint for Violations of the Federal Securities Laws. On March 12, 2020, Lead Plaintiffs filed the Amended Complaint ("Complaint"), which alleges that during the Class Period, some or all of the Defendants made false and misleading statements to investors concerning: (i) Camping World's financial results for the fourth quarter for the fiscal year 2016 (the "Financial Statements"); (ii) certain of Defendants' statements related to internal controls, disclosure controls, and Generally Accepted Accounting Principles compliance (the "Controls Statements"); and (iii) certain of Defendants' statements regarding the acquisition and integration of Gander Mountain (the "Gander Statements" and collectively with the Financial Statements and Controls Statements, the "Challenged Statements"). Lead Plaintiffs allege the Challenged Statements artificially inflated Camping World's stock price and when the truth was eventually disclosed, the price of Camping World stock declined, resulting in substantial damages to the Class.

From the outset of the Action, Defendants have denied all of these allegations and consistently maintained that they never made any statement to the market that was, or that they believed was, false or misleading, nor did they ever direct anyone to make public statements that

were, or that they believed were, false and misleading. Defendants maintain that they believed at the time and still believe that, during the Class Period and at all other times, Camping World's public statements including the Challenged Statements, were not materially false or misleading. As a result, and as argued in their Motions to Dismiss the Action, which had not been ruled on at the time of this Settlement, Defendants contend that Lead Plaintiffs did not plead an actionable claim and cannot prove any element of securities fraud, including, but not limited to, falsity, scienter, or loss causation, and cannot prove any element of the other claims Lead Plaintiffs brought, including claims based on §§11, 12, and 15 of the Securities Act of 1933.

On May 17, 2019, Defendants filed their Motions to Dismiss the Action, alleging that Lead Plaintiffs' complaint failed to state a claim for relief. Lead Plaintiffs filed their opposition on July 16, 2019, and Defendants filed their replies on August 15, 2019. At the time the Settling Parties reached an agreement to settle the Action, Defendants' Motions to Dismiss were pending before the Court.

During the Action, certain of the Settling Parties participated in a full-day mediation session with a well-respected mediator, Bill Baten, who has extensive experience mediating complex class action litigations such as this Action. Following the mediation session, which did not result in an agreement, Mr. Baten and those parties spent nearly two months continuing to negotiate a potential settlement. The Settling Parties ultimately agreed to settle the Action based upon a Mediator's Proposal issued by Bill Baten.

## II.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Throughout this Action, Defendants have denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever. Defendants expressly have denied, and continue to deny, that they have committed any act or omission giving rise to any liability under §§10(b) or 20(a) of the Securities Exchange Act of 1934 or §§11, 12(a)(2) or 15 of the

Securities Act of 1933. Specifically, Defendants expressly have denied, and continue to deny, each and all of the claims alleged by Lead Plaintiffs in the Action, including, without limitation, any liability arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action. Defendants have denied, and continue to deny, among other allegations, the allegations (i) that the Challenged Statements were materially false or misleading when made, and (ii) that Lead Plaintiffs or the Class were harmed as a result of the Challenged Statements. Specifically, as part of the settlement process, certain Defendants provided confirmatory discovery to Lead Plaintiffs in the form of documents that they intend to introduce at trial to prove that the Gander Statements challenged by Lead Plaintiffs were true at the time they were made (the "Confirmatory Discovery"). In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Action.

As set forth below, neither the Settlement nor any of the terms of this Stipulation (whether or not consummated), including the exhibits hereto (the "Exhibits") and the Plan of Allocation contained herein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of this Stipulation and the Settlement, nor any proceedings taken pursuant to or in connection with this Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith) shall in any event be construed or deemed to be evidence of or constitute an admission, concession, or finding of any fault, liability, wrongdoing, or damage whatsoever or any infirmity in the defenses that Defendants have, or could have, asserted. Defendants have concluded that further conduct of the Action would be protracted and expensive, and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.

## III.     LEAD PLAINTIFFS' CLAIMS AND THE BENEFITS OF SETTLEMENT

Lead Plaintiffs and Lead Counsel believe that the claims asserted in the Action have merit. But Lead Plaintiffs and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and through appeals.  Lead Plaintiffs and Lead Counsel also are mindful of the inherent problems of proof under and possible defenses to the securities law violations asserted in the Action, and they have reviewed the Confirmatory Discovery.  Lead Plaintiffs and Lead Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays inherent in such litigation.  Lead Plaintiffs and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Class in light of the circumstances present here.

Based on their evaluation, Lead Plaintiffs and Lead Counsel have determined that the Settlement set forth in this Stipulation is in the best interests of Lead Plaintiffs and the Class.

## IV.     TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiffs (for themselves and the members of the Class), on the one hand, and Defendants, on the other hand, by and through their respective counsel of record, that, subject to the approval of the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the parties from the Settlement set forth herein, the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, as to Lead Plaintiffs and the Defendants, upon and subject to the terms and conditions of the Stipulation, as follows.

### 1.     Definitions

As used in the Stipulation the following terms have the meanings specified below:

- 5 -

1.1     "Authorized Claimant" means any member of the Class who submits a timely and valid Proof of Claim form and whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.2     "Claims Administrator" means the firm of A.B. Data, Ltd.

1.3     "Class" means all Persons who purchased or otherwise acquired Camping World publicly traded Class A common stock during the period from October 6, 2016 through August 7, 2018, inclusive, including those who purchased or acquired shares of Camping World Class A common stock in the Company's initial public offering, which occurred on or around October 6, 2016 ("IPO"), and/or in the Company's secondary offerings, which occurred on or around May 26, 2017 and October 27, 2017, and who were allegedly damaged by Defendants' alleged conduct. Excluded from the Class are Defendants, the officers and directors of the Company during the Class Period, members of the immediate families of any excluded persons, any entity in which a Defendant has a controlling interest, and the legal representatives, heirs, successors or assigns of any such excluded party; provided, however, that any "Investment Vehicle" shall not be excluded from the Class. "Investment Vehicle" means any investment company or pooled investment fund, including, but not limited to, mutual fund families, exchange traded funds, fund of funds and hedge funds, in which Defendants, or any of them, have, has or may have a direct or indirect interest, or as to which its affiliates may act as an investment advisor, but in which any Defendant alone or together with its, his or her respective affiliates is not a majority owner or does not hold a majority beneficial interest. Also excluded from the Class are those Persons who timely and validly exclude themselves therefrom.

1.4     "Class Member" means a Person who falls within the definition of the Class as set forth in ¶1.3 of this Stipulation.

1.5    "Class Period" means the period from October 6, 2016 through August 7, 2018, inclusive.

1.6    "Defendants" means Camping World Holdings, Inc., Marcus A. Lemonis, Thomas F. Wolfe, Brent L. Moody, Stephen Adams, Crestview Partners II GP, L.P., Crestview Advisors, L.L.C., Andris A. Baltins, Brian P. Cassidy, Mary J. George, Daniel G. Kilpatrick, Howard A. Kosick, Jeffrey A. Marcus, K. Dillon Schickli, Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Credit Suisse Securities (USA) LLC, Robert W. Baird & Co. Incorporated, BMO Capital Markets Corp., KeyBanc Capital Markets Inc., Stephens Inc., and Wells Fargo Securities, LLC.

1.7    "Effective Date" means the first date by which all of the events and conditions specified in ¶8.1 of this Stipulation have been met and have occurred.

1.8    "Escrow Account" means the bank account controlled by the Escrow Agent.

1.9    "Escrow Agent" means Robbins Geller Rudman & Dowd LLP and Labaton Sucharow LLP or their respective successor(s).

1.10    "Final" means when the last of the following with respect to the Judgment approving the Settlement, in the form of Exhibit B attached hereto, shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment has passed without any appeal having been taken; and (iii) if a motion to alter or amend is filed or if an appeal is taken, the determination of that motion or appeal in such a manner as to permit the consummation of the Settlement, in accordance with the terms and conditions of this Stipulation.  For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this

Settlement, but shall not include any appeal that concerns only the issue of attorneys' fees and expenses or any Plan of Allocation of the Settlement Fund.

1.11 "Judgment" means the judgment and order of dismissal with prejudice to be rendered by the Court upon approval of the Settlement, substantially in the form attached hereto as Exhibit B.

1.12 "Lead Counsel" means Robbins Geller Rudman & Dowd LLP, 200 South Wacker Drive, 31st Floor, Chicago, Illinois 60606, and Labaton Sucharow LLP, 140 Broadway, New York, New York 10005.

1.13 "Lead Plaintiffs" means City of Pontiac General Employees' Retirement System, Oklahoma Police Pension & Retirement System, and City of Omaha Police & Fire Retirement System.

1.14 "Net Settlement Fund" means the Settlement Fund less: (i) Court-awarded attorneys' fees and expenses to Plaintiffs' Counsel and awards to Plaintiffs; (ii) Notice and Administration Costs; (iii) Taxes and Tax Expenses; and (iv) any other fees or expenses approved by the Court.

1.15 "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and his, her or its spouses, heirs, predecessors, successors, representatives, or assignees.

1.16 "Plaintiffs" means Lead Plaintiffs, Plumbers & Steamfitters Local Union #486 Pension Fund and Daniel Geis.

1.17 "Plaintiffs' Counsel" means Robbins Geller Rudman & Dowd LLP; Labaton Sucharow LLP; AsherKelly; Lindabury, McCormick, Estabrook & Cooper, P.C.; Abato, Rubenstein and Abato, P.A.; and The Weiser Law Firm, P.C.

1.18 "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of

expenses of notice and administration of the Settlement, Taxes and Tax Expenses and such attorneys' fees, costs, expenses, and interest and other expenses as may be awarded by the Court. Any Plan of Allocation is not part of the Stipulation and the Released Persons shall have no responsibility or liability with respect to the Plan of Allocation.

1.19   "Related Persons" means, with respect to the Defendants, each and all of their respective present or former parents, subsidiaries, affiliates, successors and assigns, and each and all of their respective present or former officers, directors, employees, employers, attorneys, accountants, financial advisors, commercial bank lenders, insurers, reinsurers, investment bankers, representatives, general and limited partners and partnerships, heirs, executors, administrators, successors, affiliates, agents, spouses, associates, and assigns of each of them or any trust of which any Defendant and/or their Related Persons is the settlor or which is for the benefit of any Defendant and/or their Related Persons and/or member(s) of his or her family and any entity in which any such Defendant and/or their Related Persons has a controlling interest.

1.20   "Released Claims" means any and all claims, causes of action, rights, actions, suits, obligations, debts, demands, judgments, agreements, promises, liabilities, damages, losses, controversies, costs, expenses or attorney fees, of every nature and description whatsoever and whether direct or indirect, now known or unknown, suspected or unsuspected, accrued or unaccrued, in law or in equity whether having arisen or yet to arise, including, without limitation, any claims of violations of any federal or state securities laws and any federal or state claims of fraud, intentional misrepresentation, negligent misrepresentation, negligence, gross negligence, or violations of any state or federal statutes, rules or regulations (including "Unknown Claims" as defined in the first sentence of ¶1.28 hereof), that have been or could have been alleged or asserted now or in the future by the Plaintiffs or any Class Member against the Defendants or any of them or any of the Released Persons in this Action or in any other court action or before any administrative body, tribunal,

arbitration panel, or other adjudicatory body, arising out of, relating to, or in connection with both: (a) a Class Member's purchase(s) or other acquisition(s) of Camping World's publicly traded Class A common stock during the Class Period; and (b) the acts, facts, transactions, events, occurrences, disclosures, statements, omissions, or failures to act that were alleged, may have been alleged, or could have been alleged in the Action. For the avoidance of doubt, Released Claims includes the claims alleged as of the date of this Settlement Agreement, in the actions captioned: *International Union of Operating Engineers Benefit Funds of Eastern Pennsylvania and Delaware v. Camping World Holdings, Inc., et al.*, No. 656308/2018 (N.Y. Sup. Ct. N.Y. Cty.); and *Daniel Geis v. Camping World, et al.*, No. 2019-CH-02404 (Ill. Cir. Ct. Cook Cty.), but does not include any claims to enforce the Settlement, or the claims alleged as of the date of this Settlement Agreement, in the following actions, or any action consolidated therewith: *In re Camping World Holdings, Inc. Stockholder Derivative Litigation*, No. 1:19-cv-01467 (D. Del.) and *In re Camping World Holdings, Inc. Stockholder Derivative Litigation*, No. 2019-0179-AGB (Del. Ch.).

1.21    "Released Defendants' Claims" means any claims relating to the institution, prosecution, assertion, settlement, or resolution of the Action, including "Unknown Claims" as defined in the first sentence of ¶1.28 hereof, to the extent that such "Unknown Claims" relate solely to the institution, prosecution, assertion, settlement, or resolution of the Action.  For avoidance of doubt, claims to enforce the Settlement are not released.

1.22    "Released Persons" means each and all of Defendants and each and all of their Related Persons, including but not limited to CVRV Acquisition LLC, CVRV Acquisition II LLC, and CWGS Holding, LLC.

1.23    "Releasing Plaintiff Party" or "Releasing Plaintiff Parties" means Plaintiffs' Counsel and each and every Plaintiff, Class Member, and each of their respective past or present trustees, officers, directors, partners, employees, contractors, accountants, auditors, principals, agents,

attorneys, predecessors, successors, assigns, representatives, affiliates, insurers, parents, subsidiaries, general or limited partners or partnerships, and limited liability companies in their capacities as such, and the spouses, members of the immediate families, administrators, executors, trustees, and heirs of any Releasing Plaintiff Party who is an individual, as well as any trust of which any Releasing Plaintiff Party is the Settlor or which is for the benefit of any of their immediate family members. Releasing Plaintiff Parties does not include any Person who timely and validly sought exclusion from the Class.

1.24    "Settlement Amount" means Twelve Million, Five Hundred Thousand Dollars ($12,500,000.00) in cash.

1.25    "Settlement Fund" means the Settlement Amount paid by or behalf of Defendants pursuant to ¶3.1 of this Stipulation, together with all interest and income earned thereon after being transferred to an account controlled by the Escrow Agent.  Such amount is paid as consideration for full and complete settlement of all the Released Claims.

1.26    "Underwriter Defendants" means Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Credit Suisse Securities (USA) LLC, Robert W. Baird & Co. Incorporated, BMO Capital Markets Corp., KeyBanc Capital Markets Inc., Stephens Inc., and Wells Fargo Securities, LLC.

1.27    "Settling Parties" means (i) Defendants and (ii) Plaintiffs on behalf of themselves and the Class Members.

1.28    "Unknown Claims" means (a) any and all Released Claims which Plaintiffs or any Class Members do not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this Settlement or seek exclusion from the Class; and (b) any and all Released Defendants' Claims

that the Released Persons do not know or suspect to exist in his, her or its favor at the time of the release of the Plaintiffs, the Class and Plaintiffs' Counsel, which, if known by him, her, or it, might have affected his, her, or its settlement and release of Plaintiffs, the Class and Plaintiffs' Counsel. With respect to (a) any and all Released Claims against the Released Persons, and (b) any and all Released Defendants' Claims against Releasing Plaintiff Parties, the Settling Parties stipulate and agree that, upon the Effective Date, Plaintiffs shall expressly and each of the other Releasing Plaintiff Parties shall be deemed to have, and by operation of the Judgment shall have, expressly waived to the fullest extent permitted by law the provisions, rights, and benefits of California Civil Code §1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

The Settling Parties shall each expressly waive and each Releasing Plaintiff Party and Released Person shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542. The Releasing Plaintiff Parties and Released Persons acknowledge that they may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but (a) the Releasing Plaintiff Parties shall each expressly, fully, finally and forever waive, compromise, settle, discharge, extinguish, and release, and each other Releasing Plaintiff Party shall be deemed to have waived, compromised, settled, discharged, extinguished, and released, and each of the Class Members upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever, waived, compromised, settled, discharged, extinguished, and released any and all Released Claims against the Released Persons,

- 12 -

known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of law, or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories or authorities, whether or not previously or currently asserted in any action, and (b) the Released Persons shall be deemed to have fully, finally and forever waived, compromised, settled, discharged, extinguished, and released fully, finally, and forever any and all Released Defendants' Claims against the Releasing Plaintiff Parties, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice or a breach of any law or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. The Settling Parties acknowledge, and the Releasing Plaintiff Parties and Released Persons shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and an essential term of the Settlement of which this release is a part.

## 2. CAFA Notice

2.1    Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), no later than ten (10) calendar days after the Settlement Agreement is filed with the Court, the Claims Administrator shall, at Camping World's expense, serve proper notice of the proposed Settlement upon the appropriate Federal and State officials. Simultaneously, the Claims Administrator shall provide a copy of such notice as well as proof of service of such notice to counsel for Plaintiffs and Defendants.

3.    **The Settlement**

a.    **The Settlement Fund**

3.1    Camping World shall cause Twelve Million, Five Hundred Thousand Dollars ($12,500,000.00) to be transferred to an account controlled by the Escrow Agent within twenty (20) business days after the later of (a) entry of the order granting the motion for preliminary approval or (b) the receipt by Camping World's counsel of wire/check payee instructions and a Form W-9 providing the tax identification number for the Escrow Account. These funds, together with any interest and income earned thereon once transferred, shall constitute the Settlement Fund.

3.2    If the entire Settlement Amount is not timely paid to the Escrow Agent, Lead Counsel may terminate the Settlement but only if: (i) Lead Counsel have notified Defendants' counsel in writing of Lead Counsel's intention to terminate the Settlement, and (ii) the entire Settlement Amount is not transferred to the Escrow Account within five (5) business days after Lead Counsel have provided such written notice.

b.    **The Escrow Agent**

3.3    The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶3.1 hereof in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All costs and risks related to the investment of the Settlement Fund in accordance with the guidelines set forth in this paragraph shall be borne by the Settlement Fund.

3.4    The Escrow Agent shall not disburse the Settlement Fund except (a) as provided in the Stipulation, (b) by an order of the Court, or (c) with the written agreement of counsel for the Settling Parties.

3.5     Subject to further order(s) and/or directions as may be made by the Court, or as provided in the Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation.  Other than the obligation to pay or cause to be paid the Settlement Amount into the Escrow Account set forth in ¶3.1 herein, the Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Lead Counsel or the Claims Administrator, or any of their respective designees, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any Claims asserted against the Settlement Fund; (v) any loss suffered by, or fluctuation in value of, the Settlement Fund; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund, distributions or other payments from the Escrow Account, or the filing of any federal, state, or local returns.  Other than the obligation to cause the payment of the Settlement Amount pursuant to ¶3.1, Defendants shall have no obligation to make any other payments into the Escrow Account or to any Class Member pursuant to the Stipulation.

3.6     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

3.7     Prior to the Effective Date, the Escrow Agent, without further approval of Defendants or the Court, may pay from the Settlement Fund up to $500,000.00 in Notice and Administration Costs (defined below) associated with the administration of the Settlement, including, without limitation: the cost of identifying and locating members of the Class, mailing the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and Proof of Claim ("Proof of Claim" or "Claim Form") and publishing a summary notice.  Notice and Administration Costs shall include,

without limitation, the actual costs of publication, printing and mailing the Notice, and reimbursement to nominee owners for forwarding notice to their beneficial owners, soliciting Class claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Claim Forms, and paying escrow fees and costs, if any, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims ("Notice and Administration Costs").  Prior to the Effective Date, payment of any Notice and Administration Costs exceeding $500,000.00 shall require an agreement from the Defendants, through Defendants' counsel, which agreement shall not be unreasonably refused.  Subsequent to the Effective Date, without further approval by Defendants or the Court, the Settlement Fund may be used by Lead Counsel to pay reasonable and necessary Notice and Administration Costs in excess of $500,000.00.

### c. Taxes and Qualified Settlement Fund

3.8 (a) The Settling Parties agree to treat the Settlement Fund as being at all times a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶3.8, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b) For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  Lead Counsel shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury

Regulation §1.468B-2(k)).  Such returns (as well as the election described in ¶3.8(a) hereof) shall be consistent with this ¶3.8 and in all events shall reflect that all Taxes (defined below) including any estimated Taxes, interest, or penalties on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶3.8(c) hereof.

(c)     All (a) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Persons or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal or state income tax purposes ("Taxes"), and (b) expenses and costs incurred in connection with the operation and implementation of this ¶3.8 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶3.8) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Persons and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses.  The Settlement Fund shall indemnify and hold each of the Released Persons and their counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation §1.468B-2(l)(2)); neither the Released Persons nor their counsel are responsible nor shall they have any liability therefor.  The Settling Parties hereto agree to cooperate with the Escrow

Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶3.8.

**d. Refund Upon Termination of Settlement**

3.9    In the event the Stipulation: (i) is not approved; (ii) is terminated, canceled, or fails to become effective for any reason, including, without limitation, in the event the Judgment is reversed or vacated following any appeal taken therefrom; or (iii) is successfully collaterally attacked, the Settlement Fund (including accrued interest) less expenses actually incurred or due and owing for Notice and Administration Costs, Taxes or Tax Expenses pursuant to ¶¶3.7 or 3.8, shall be refunded pursuant to written instructions from Camping World's counsel.

**4. Notice Order and Settlement Hearing**

4.1    Promptly after execution of the Stipulation, the Settling Parties shall submit the Stipulation together with the Exhibits to the Court and shall apply for entry of an order (the "Notice Order"), substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation, certification of the Class for settlement purposes, and approval for the mailing of the Notice and publication of the Summary Notice, substantially in the forms of Exhibits A-1 and A-3 attached hereto.  The Notice shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, and the date of the Settlement Hearing.

4.2    Lead Counsel shall request that after notice is given to the Class, and not earlier than ninety (90) calendar days after the Court issues preliminary approval of the proposed Settlement, the Court hold a hearing (the "Settlement Hearing") to consider approval of the Settlement of the Action as set forth herein.  At or after the Settlement Hearing, Lead Counsel also shall request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

- 18 -

5.      **Releases**

5.1     Upon the Effective Date, Plaintiffs, each of the Class Members (who have not validly opted out of the Class) and the other Releasing Plaintiff Parties in their capacities as such, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged against the Released Persons (whether or not such Class Members execute and deliver the Proof of Claim forms) any and all Released Claims (including, without limitation, Unknown Claims), as well as any claims arising out of, relating to, or in connection with, the defense, settlement, or resolution of the Action or the Released Claims.  Claims to enforce the Settlement are not released.

5.2     Upon the Effective Date, Plaintiffs and each of the Class Members (who have not validly opted out of the Class), and the other Releasing Plaintiff Parties, in their capacities as such, shall be permanently barred and enjoined from the assertion, institution, maintenance, prosecution, or enforcement against any Released Person, in any state or federal court or arbitral forum, or in the court of any foreign jurisdiction, of any and all Released Claims (including, without limitation, Unknown Claims), as well as any claims arising out of, relating to, or in connection with, the defense, settlement, or resolution of the Action or the Released Claims.

5.3     The Proof of Claim to be executed by Class Members shall release all Released Claims against the Released Persons and shall be substantially in the form contained in Exhibit A-2 attached hereto.

5.4     Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, each and all of the Class Members, Plaintiffs' Counsel, and the other Released Plaintiff Parties from all Released Defendants' Claims.  Claims to enforce the Settlement are not released.

5.5     Nothing in this Settlement Agreement shall release any claims that the Defendants may have against their liability insurance carriers or liability insurance policies, and Defendants expressly reserve all rights, claims, positions, arguments, contentions, and defenses with respect to such matters.  Furthermore, nothing in this Settlement Agreement is intended to be construed to impair, negate, diminish, or adversely affect any rights to indemnification or contribution that any Person has provided to any Underwriter Defendant.

**6.      Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

6.1     The Claims Administrator, subject to such supervision and direction of Lead Counsel and the Court as may be necessary or as circumstances may require, shall provide notice of the Settlement to the Class, shall administer and calculate the claims submitted by Class Members, and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

6.2     Within ten (10) calendar days after execution of this Stipulation, counsel for Camping World shall provide the Claims Administrator with a list of names and addresses of record holders of Camping World common stock during the Class Period.  This information shall be provided in an electronic format acceptable to the Claims Administrator.  Camping World shall be responsible for any costs or expenses related to providing this information.

6.3     In accordance with the schedule set forth in the Notice Order, Lead Counsel will cause to be mailed by the Claims Administrator to all shareholders of record, identified on the Claims Administrator's list, the Notice, substantially in the form of Exhibit A-1 attached hereto, and a Proof of Claim, substantially in the form of Exhibit A-2 attached hereto.  The Notice shall set forth the terms of the Stipulation, including the proposed Plan of Allocation and Lead Counsel's request for attorneys' fees and expenses; the date and time of the Settlement Hearing; the right to object to the Settlement, proposed Plan of Allocation, or request for fees and expenses; the right to appear at the Settlement Hearing; and the right to request exclusion from the Class.  The Notice and Proof of

Claim form shall also be posted on the case-specific website established by the Claims Administrator. In accordance with the schedule set forth in the Notice Order, a summary notice, substantially in the form of Exhibit A-3 attached hereto, will also be published once in the national edition of *The Wall Street Journal* and once over a national newswire service. The cost of providing such notice shall be paid out of the Settlement Fund.

6.4 The Settlement Fund shall be applied as follows:

(a) to pay Plaintiffs' Counsel's attorneys' fees and expenses and awards to Plaintiffs (the "Fee and Expense Award"), if and to the extent allowed by the Court;

(b) to pay all Notice and Administration Costs;

(c) to pay the Taxes and Tax Expenses described in ¶3.8 hereof; and

(d) after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

6.5 Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following.

6.6 Each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit A-2 attached hereto, postmarked or submitted by no later than ninety (90) calendar days after the Notice Date (as defined in Exhibit A, attached hereto), or such other time as may be set by the Court (the "Bar Date"), signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and as are reasonably available to such Person.

6.7 Except as otherwise ordered by the Court, all Class Members who fail to submit a Proof of Claim by the Bar Date, or such other period as may be ordered by the Court or allowed by

Lead Counsel (whichever is longer), or who submit a Proof of Claim that is rejected, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment. Notwithstanding the foregoing, Lead Counsel may, in their discretion, accept for processing late-submitted claims so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed. No Person shall have any claims against any Plaintiff, Plaintiffs' Counsel, the Claims Administrator or any Class Member by reason of the exercise or non-exercise of such discretion.

6.8    Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, who shall determine, in accordance with this Stipulation and the approved Plan of Allocation, the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to ¶6.10 below.

6.9    Proof of Claim forms that do not meet the submission requirements may be rejected. Prior to rejecting a Proof of Claim in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant the chance to remedy any curable deficiencies in the Proof of Claim submitted. The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of ¶6.10 below.

6.10    If any claimant whose timely claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of mailing of the notice required in ¶6.9 above, or a lesser period of time if the claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the

claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the claimant's request for review to the Court.

6.11    Each claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Person's claim to the Net Settlement Fund.  All proceedings with respect to the administration, proceeding and determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court, but shall not in any event delay or affect the finality of the Judgment.  All Class Members, other claimants, and parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

6.12    The Claims Administrator shall calculate the claims of Authorized Claimants in accordance with the Plan of Allocation.  Following the Effective Date, the Claims Administrator shall send to each Authorized Claimant his, her, or its *pro rata* share of the Net Settlement Fund.  No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00.

6.13    The Settlement is not claims-made and Defendants shall not have a reversionary interest in the Net Settlement Fund.  If there is any balance remaining in the Net Settlement Fund after at least six (6) months from the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, distribute such balance in an equitable and economical manner among Authorized Claimants who negotiated the checks sent to them in the initial distribution.  These redistributions shall be repeated until the balance remaining in the Net Settlement Fund is *de minimis* and such remaining balance shall then be donated to an appropriate non-profit organization designated by Lead Counsel.

6.14    The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes, or any losses incurred in connection therewith, including, but not limited to: (i) any act, omission, or determination by Lead Counsel, the Escrow Agent, and/or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management or investment of the Settlement Fund or the Net Settlement Fund, or the distribution of the Net Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in value of, the Settlement Fund; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

6.15    Defendants shall take no position with respect to the Plan of Allocation or any other such plan as may be approved by the Court.

6.16    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Judgment approving the Stipulation and the Settlement set forth therein, or any other orders entered pursuant to the Stipulation.  Class Members and Defendants shall be bound by the terms of this Stipulation, irrespective of whether the Court disapproves or modifies the Plan of Allocation.

6.17    No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, Released Persons, Defendants' counsel, or the Claims Administrator based on distributions made substantially in accordance with the Settlement, the Stipulation, and the Plan of Allocation, or otherwise as further ordered by the Court.

### 7.    Lead Counsel's Attorneys' Fees and Expenses

7.1    Lead Counsel may submit an application or applications on behalf of Plaintiffs' Counsel (the "Fee and Expense Application") for distributions from the Settlement Fund of (a) an award of attorneys' fees to be paid out of the Settlement Fund plus (b) expenses in connection with prosecuting the Action, plus interest on both amounts.  In addition, Plaintiffs may submit a request for awards in connection with their representation of the Class pursuant to 15 U.S.C. §78u-4(a)(4). Any and all such fees, expenses and costs awarded by the Court (whether payable to Lead Counsel or Plaintiffs) shall be payable solely out of the Settlement Fund.

7.2    The attorneys' fees and expenses, and costs, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately following the Settlement Hearing and any order by the Court awarding such fees and expenses.  This provision shall apply notwithstanding timely objections to, potential for appeal from, or collateral attack on, the Settlement or the award of fees and expenses.  Lead Counsel shall thereafter allocate the attorneys' fees amongst other Plaintiffs' Counsel in a manner that Lead Counsel in good faith believe reflects the contributions of such counsel to the prosecution and settlement of the Action.  Any such awards shall be paid solely by the Settlement Fund.  In the event that the Judgment or the order awarding such fees and expenses paid to Lead Counsel pursuant to ¶7.1 is reversed or modified, or if the Settlement is cancelled or terminated for any reason, then Lead Counsel shall, in an amount consistent with such reversal or modification, refund such fees or expenses to the Settlement Fund, plus interest earned thereon at the same rate as earned on the Settlement Fund, within twenty (20)

business days from receiving notice from Defendants' counsel or from a court of competent jurisdiction of a final non-appealable order reversing or modifying the amount of attorneys' fees and/or expenses awarded. Any refunds required pursuant to this paragraph shall be the joint and several obligation of each Plaintiffs' Counsel receiving fees or expenses to make appropriate refunds or repayments to the Settlement Fund. Each Plaintiffs' Counsel, as a condition of receiving such fees, expenses and/or costs on behalf of itself and each partner and/or shareholder of it, agrees that its law firm and its partners and/or shareholders are subject to the jurisdiction by the Court for the purpose of enforcing the provisions of this paragraph. Without limitation, each Plaintiffs' Counsel agrees that the Court may, upon application of Defendants and notice to Lead Counsel, summarily issue orders including, but not limited to, judgments and attachment orders and may make appropriate findings of or sanctions for contempt, should such law firm fail timely to repay fees and expenses pursuant to this ¶7.2.

7.3     The procedure for and the allowance or disallowance by the Court of the Fee and Expense Application, to be paid out of the Settlement Fund, are not part of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Action.

7.4     Released Persons, other than Camping World's insurers, shall have no responsibility for any payment of attorneys' fees and expenses to Plaintiffs' Counsel or any Class Member's counsel. Neither Defendants nor Defendants' insurers shall have any responsibility for any payment of attorneys' fees and expenses to Plaintiffs' Counsel or any Class Member's counsel apart from payment of the Settlement Fund pursuant to ¶3.1.

- 26 -

7.5     Released Persons shall have no responsibility for the allocation among Plaintiffs' Counsel or any Class Member's counsel, and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

**8.     Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

8.1     The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)     execution of the Stipulation and such other documents as may be required to obtain final Court approval of the Stipulation in a form satisfactory to the Settling Parties;

(b)     the Settlement Amount has been deposited with the Escrow Agent;

(c)     Defendants have not exercised their option to terminate the Stipulation pursuant to ¶8.4 hereof;

(d)     the Court has entered the Notice Order, substantially in the form of Exhibit A hereto, as required by ¶4.1 hereof;

(e)     the Court has entered the Judgment that, *inter alia*, dismisses with prejudice the Action, as to Plaintiffs and the Defendants, as set forth above; and

(f)     the Judgment has become Final, as defined in ¶1.10 hereof.

8.2     Upon the occurrence of all of the events referenced in ¶8.1 hereof, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.  If all of the conditions specified in ¶8.1 hereof are not met, then the Stipulation shall be canceled and terminated subject to ¶8.5 hereof unless Lead Counsel and counsel for Defendants mutually agree in writing to proceed with the Settlement.

8.3     The Settling Parties expect that, upon the occurrence of all of the events referenced in ¶8.1 hereof, the action captioned *Daniel Geis v. Camping World, et al.*, No. 2019-CH-02404 (Ill. Cir.

Ct. Cook Cty.) will be subsequently dismissed, and will take all steps reasonably appropriate to seek such dismissal.

8.4     If, prior to the Settlement Hearing, Persons who otherwise would be members of the Class have timely requested exclusion from the Class in accordance with the provisions of the Notice Order and the Notice given pursuant thereto, and such Persons in the aggregate purchased or otherwise acquired a number of shares of Camping World common stock during the Class Period in an amount greater than the sum specified in a separate Supplemental Agreement Regarding Requests for Exclusion ("Supplemental Agreement") executed between Plaintiffs and Camping World, Camping World shall have the sole option to terminate this Stipulation and Settlement in accordance with the procedures set forth in the Supplemental Agreement.  The Supplemental Agreement will not be filed with the Court unless and until a dispute between Plaintiffs and Camping World concerning its interpretation or application arises.  Copies of all requests for exclusion received, together with copies of all written revocations of requests for exclusion, shall be promptly delivered to Defendants' counsel by Lead Counsel.  Camping World may terminate the Stipulation and Settlement pursuant to the Supplemental Agreement by serving written notice of termination on the Court and Lead Counsel on or before seven (7) business days after the receipt of all of the copies of the requests for exclusion, on or before ten (10) business days after the Court grants additional time for exclusion for any reason, or on or before three (3) business days before the Settlement Hearing, whichever occurs last.  In the event that the Camping World serves a written notice of termination pursuant to the Supplemental Agreement, Camping World may withdraw its written notice of termination by providing written notice of such withdrawal to Lead Counsel and to the Court by no later than 5:00 PM Eastern Time on the day prior to the Settlement Hearing, or by such later date as shall be agreed upon in writing as between Lead Counsel and Defendants' counsel.  Plaintiffs agree that they shall not elect to opt out from the Class.

8.5     Each of Plaintiffs and Defendants shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) calendar days of: (a) the Court's refusal to enter the Notice Order; (b) the Court's refusal to approve the Settlement; (c) the Court's refusal to enter the Judgment; (d) the date upon which the Judgment is reversed or vacated or altered following an appeal taken therefrom, or is successfully collaterally attacked; or (e) the failure of the Effective Date to occur for any reason. For avoidance of doubt, no order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of attorneys' fees, expenses and interest awarded by the Court to Lead Counsel or costs or awards to Plaintiffs shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination of the Settlement.

8.6     Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, within five (5) business days after written notification of such event is sent by counsel for Defendants or Lead Counsel, the Settlement Fund (including accrued interest), less expenses which have either been incurred or disbursed pursuant to ¶¶3.7 or 3.8 hereof, shall be refunded pursuant to written instructions from Defendants' counsel. At the request of counsel for Defendants, the Escrow Agent or their designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any expenses incurred in connection with such application(s) for refund, at the written direction of Defendants' counsel.

8.7     In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Action as of August 16, 2019. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶1.1-1.28, 3.7-3.9, 7.2, 8.4-8.6 and 9.3-9.5 hereof, shall have no further force and effect with respect to the Settling

Parties and shall not be used in this Action or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*, and the Settling Parties shall be deemed to return to their status as of August 16, 2019, and shall be required to present an amended trial schedule to the Court. No order of the Court or modification or reversal on appeal of any such order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, and expenses, and interest awarded by the Court to Lead Counsel or Plaintiffs shall constitute grounds for cancellation or termination of the Stipulation.

### 9. Miscellaneous Provisions

9.1 The Settling Parties (a) acknowledge that it is their intent to consummate this Stipulation; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation expeditiously.

9.2 The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Action. The Settlement shall not be deemed an admission by any Settling Party or any of the Released Persons as to the merits of any claim or defense. The Settling Parties and their counsel agree that they shall not assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense or settlement of the Action, and the Final Judgment shall contain a finding that all Settling Parties and their counsel complied with the requirements of Rule 11 with respect to the institution, prosecution, defense, and resolution of the Action. The Settling Parties agree that the amount paid into the Settlement Fund and the other terms of the Settlement were negotiated in good faith at arm's length by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to

be appropriate, any contention made in any public forum regarding the Action, including that the Action was brought or defended in bad faith or without a reasonable basis.

9.3     Neither the Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement (a) shall be offered or received against any Released Person as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Released Person of the truth of any allegations by Plaintiffs or any Class Member or the validity of any claim that has been or could have been asserted in the Action, or the deficiency of any defense that has been or could have been asserted in the Action or in any other litigation, including, but not limited to, litigation of the Released Claims, or of any liability, negligence, fault, or wrongdoing of any kind of any of the Released Persons or in any way referred to for any other reason as against any of the Released Persons, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or (b) shall be offered or received against any Released Person as evidence of a presumption, concession, or admission of any fault, misrepresentations, or omission with respect to any statement or written document approved or made by any Released Person, or against Plaintiffs or any Class Member as evidence of any infirmity in the claims of Plaintiffs and the Class; (c) shall be offered or received against any Released Person as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any of the parties to this Stipulation, in any other civil, criminal, or administrative action or proceeding; provided, however, that if this Stipulation is approved by the Court, Released Persons may refer to it to effectuate the release granted them hereunder; or (d) shall be construed against Defendants, Plaintiffs, or the Class as evidence of a presumption, concession or admission that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial or in any proceeding

- 31 -

other than this Settlement. The Released Persons may file the Stipulation and/or the Judgment in any action that has been or may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.4     All agreements made and orders entered during the course of the Action relating to the confidentiality of documents and information shall survive this Stipulation.

9.5     All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.6     The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.7     No waiver of any term or provision of this Settlement Agreement, or of any breach or default hereof or hereunder, shall be valid or effective unless in writing and signed by or on behalf of all Settling Parties or their respective successors-in-interest. No waiver of any term or provision of this Settlement Agreement, or of any breach or default hereof or hereunder, shall be construed as a waiver of the same or any other term or provision or of any previous or subsequent breach thereof.

9.8     The Stipulation and the Exhibits attached (together with the Supplemental Agreement referred to in ¶8.4) hereto constitute the entire agreement among the Settling Parties and no representations, warranties, or inducements have been made to any Settling Party concerning the Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. Except as otherwise provided herein (or, as between Defendants, in any separate agreements between them), each Settling Party shall bear its own costs.

9.9     This Settlement Agreement shall be construed and interpreted to effectuate the intent of the Settling Parties, which is to resolve completely those claims and disputes, including in the

Action, and as more fully described herein. If any provision of this Settlement Agreement shall be determined to be invalid, void, or illegal, such provision shall be construed and amended in a manner that would permit its enforcement, but in no event shall such provision affect, impair, or invalidate any other provision hereof.

9.10     Neither the Class Members nor Defendants shall be bound by the Stipulation if the Court modifies material terms thereof, provided, however, that it shall not be a basis for Class Members to terminate the Settlement if the Court modifies any proposed Plan of Allocation or criteria for allocation of the Net Settlement Fund amongst Class Members, or the Plan of Allocation is modified on appeal. Nor shall it be a basis to terminate the Stipulation if the Court disapproves of or modifies the terms of this Stipulation with respect to attorneys' fees or expenses or the distribution of the Net Settlement Fund. Notwithstanding any such modification of the terms or Plan of Allocation or the Stipulation with respect to attorneys' fees or expenses, Defendants and Defendants' insurers shall be entitled to all benefits of the Settlement and shall not, under any circumstances, be called upon to contribute additional funds to the Settlement Fund.

9.11     Lead Counsel, on behalf of the Class, are expressly authorized by Lead Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to the Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Class which they deem appropriate.

9.12     Lead Plaintiffs and Lead Counsel represent and warrant that none of the Lead Plaintiffs' claims or causes of action referred to in this Action or this Stipulation has been assigned, encumbered, or in any manner transferred in whole or in part.

9.13     Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any Settling Party hereby warrants that such Person has the full authority to do so.

9.14    All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given (i) when delivered personally to the recipient, (ii) one (1) business day after being sent to the recipient by reputable overnight courier service (charges prepaid), or (iii) five (5) business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

*If to Lead Plaintiffs or to Lead Counsel*:

Ellen Gusikoff Stewart
Robbins Geller Rudman & Dowd LLP
655 W. Broadway, Suite 1900
San Diego, CA 92101

Michael P. Canty
Labaton Sucharow LLP
140 Broadway
New York, NY 10005

*If to Defendants or to Defendants' Counsel*:

Eric R. Swibel
Latham & Watkins, LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611

Jed M. Schwartz
Milbank LLP
55 Hudson Yards
New York, NY 10001

9.15    The Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Signatures sent by facsimile or via email in PDF format shall be deemed originals. A complete set of executed counterparts shall be filed with the Court.

9.16    The Stipulation shall be binding upon, and inure to the benefit of, the heirs, successors, and assigns of the Settling Parties hereto.

9.17    The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Stipulation, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

9.18    Pending approval of the Court of the Stipulation and its Exhibits, all proceedings in this Action shall be stayed and all members of the Class shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Persons, including in any other action.

9.19    This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's length negotiations between the Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

9.20    Nothing in the Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

9.21    Unless otherwise provided, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation without further order of the Court.

9.22    This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Illinois, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Illinois, without giving effect to that State's choice-of-law principles.

**IN WITNESS WHEREOF**, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys.

DATED: March 12, 2020

ROBBINS GELLER RUDMAN
   & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
BRIAN E. COCHRAN (IL Bar # 6329016)
FRANK A. RICHTER (IL Bar # 6310011)

           JAMES E. BARZ

200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 312/674-4674
312/674-4676 (fax)
jbarz@rgrdlaw.com
bcochran@rgrdlaw.com
frichter@rgrdlaw.com
ROBBINS GELLER RUDMAN
   & DOWD LLP
Ellen Gusikoff Stewart
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

*Counsel for City of Pontiac General Employees'
Retirement System, Oklahoma Police Pension &
Retirement System, Plumbers & Steamfitters
Local Union #486 Pension Fund and Lead
Counsel for the Class*

DATED: March 12, 2020

LABATON SUCHAROW LLP
THOMAS A. DUBBS (*pro hac vice*)
MICHAEL P. CANTY (*pro hac vice*)
THOMAS G. HOFFMAN, JR. (*pro hac vice*)
MARISA N. DEMATO (*pro hac vice*)

           MICHAEL P. CANTY

**IN WITNESS WHEREOF**, the parties hereto have caused the Stipulation to be executed,

by their duly authorized attorneys.

DATED: March 12, 2020

ROBBINS GELLER RUDMAN
   & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
BRIAN E. COCHRAN (IL Bar # 6329016)
FRANK A. RICHTER (IL Bar # 6310011)

_____

JAMES E. BARZ

200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 312/674-4674
312/674-4676 (fax)
jbarz@rgrdlaw.com
bcochran@rgrdlaw.com
frichter@rgrdlaw.com
ROBBINS GELLER RUDMAN
   & DOWD LLP
Ellen Gusikoff Stewart
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

*Counsel for City of Pontiac General Employees'
Retirement System, Oklahoma Police Pension &
Retirement System, Plumbers & Steamfitters
Local Union #486 Pension Fund and Lead
Counsel for the Class*

DATED: March 12, 2020

LABATON SUCHAROW LLP
THOMAS A. DUBBS (*pro hac vice*)
MICHAEL P. CANTY (*pro hac vice*)
THOMAS G. HOFFMAN, JR. (*pro hac vice*)
MARISA N. DEMATO (*pro hac vice*)

_____

MICHAEL P. CANTY

140 Broadway
New York, New York 10005
Telephone:  212/907-0700
212/818-0477 (fax)
tdubbs@labaton.com
mcanty@labaton.com
thoffman@labaton.com
mdemato@labaton.com

*Counsel for the City of Omaha Police & Fire
Retirement System and Lead Counsel for the
Class*

ASHERKELLY
CYNTHIA J. BILLINGS-DUNN
25800 Northwestern Highway  Suite 1100
Southfield, MI  48075
Telephone:  248/746-0700
248/746-2760 (fax)

*Additional Counsel for the City of Pontiac
General Employees' Retirement System*

DATED: March 12, 2020                LATHAM & WATKINS LLP
                                     ANDREW B. CLUBOK
                                     ERIC R. SWIBEL

                                     _____
                                             ANDREW CLUBOK

                                     Andrew Clubok
                                     555 Eleventh St., NW
                                     Suite 1000
                                     Washington, D.C. 20004-1304
                                     Phone: (202) 637-2200
                                     Fax: (202) 637-2201
                                     andrew.clubok@lw.com

                                     Eric R. Swibel
                                     Kathryn K. George
                                     330 North Wabash Avenue, Suite 2800
                                     Chicago, Illinois 60611
                                     Phone: (312) 876-7700
                                     Fax: (312) 993-9767
                                     eric.swibel@lw.com
                                     kathryn.george@lw.com

- 37 -

*Counsel for Defendants Camping World
Holdings, Inc., Marcus A. Lemonis, Thomas F
Wolfe, Brent L. Moody, Stephen Adams,
Crestview Partners II GP, L.P., Crestview
Advisors, L.L.C., Andris A. Ba/tins, Brian P.
Cassidy, Mary J. George, Daniel G. Kilpatrick,
Howard A. Kosick, Jeffrey A. Marcus, and K
Dillon Schickli*

DATED: March 12, 2020

MILBANK LLP
SCOTT A. EDELMAN
JED M. SCHWARTZ

JED M. SCHWARTZ
55 Hudson Yards
New York, New York 10001
Phone: (212) 530-5000
Fax: (212) 530-5219
sedelman@milbank.com
jschwartz@milbank.com

*Counsel for Underwriter Defendants Goldman
Sachs & Co. LLC, J.P. Morgan Securities LLC,
Merrill Lynch, Pierce, Fenner & Smith
Incorporated, Credit Suisse Securities (USA)
LLC, Robert W. Baird & Co. Incorporated, BMO
Capital Markets Corp., KeyBanc Capital Markets
Inc., Stephens Inc. and Wells Fargo Securities,
LLC*