UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| DAVID RONGE, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>CAMPING WORLD HOLDINGS, INC., et al., )<br><br>Defendants. ) | Case No. 1:18-cv-07030<br>**(Consolidated)**<br><br>CLASS ACTION<br><br>Judge Rebecca R. Pallmeyer |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL
OF PLAN OF ALLOCATION

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................1

II. SUMMARY OF THE LITIGATION ....................................................3

III. LEAD PLAINTIFFS HAVE PROVIDED NOTICE IN COMPLIANCE WITH RULE 23 AND DUE PROCESS .............................................................4

IV. ARGUMENT .........................................................................................5

    A. The Proposed Settlement Warrants Final Approval .................5

        1. Lead Plaintiffs and Lead Counsel Adequately Represented the Class ...................................................6

        2. The Settlement Resulted from Extensive Arm's-Length Negotiations ...................................................6

        3. The Settlement Provides a Favorable Benefit to the Class Considering the Costs, Risks, and Delay of Trial and Appeal ....................7

            a. Risks to Establishing Liability ........................................8

            b. Risks Related to Proving Loss Causation and Damages ................9

        4. The Settlement Is Fair and Adequate Under the Remaining Rule 23(e)(2) Factors .................................11

            a. The Method for Distributing Relief Is Effective............................11

            b. Counsel's Fees Are Reasonable.....................................12

            c. Settlement-Related Agreements.....................................12

            d. The Settlement Treats Class Members Equitably...........................12

        5. The Endorsement of Lead Counsel and the Reaction of the Class Favor Approval ...........................................13

    B. The Plan of Allocation Warrants Final Approval ...................14

    C. Class Certification Remains Warranted...................................15

V. CONCLUSION....................................................................................15

- i -

# TABLE OF AUTHORITIES

Page

## CASES

*Eubank v. Pella Corp.*,
753 F.3d 718 (7th Cir. 2014) ..................................................................12

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ..................................................................10

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ................................................................10

*In re Career Educ. Corp. Sec. Litig.*,
No. 03 C 8884, 2008 WL 8666579
(N.D. Ill. June 26, 2008) ...........................................................................7

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ....................................................................5

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
No. 97 C 7694, 2001 WL 1568856
(N.D. Ill. Dec. 10, 2001) ...............................................................10, 14

*Reynolds v. Ben. Nat'l Bank*,
288 F.3d 277 (7th Cir. 2002) ..................................................................11

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ...........................................8, 10, 13

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) .......................................................... *passim*

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§77k .............................................................................................................3
§77l(a)(2) ....................................................................................................3
§77o .............................................................................................................3
§78j(b) .........................................................................................................3
§78t(a) .........................................................................................................3

**Page**

Federal Rules of Civil Procedure
    Rule 23...................................................................................................4, 5, 13, 14
    Rule 23(a).................................................................................................15
    Rule 23(b)(3).............................................................................................15
    Rule 23(c)(2)(B).........................................................................................4, 5
    Rule 23(e)(2).........................................................................................*passim*
    Rule 23(e)(2)(A).........................................................................................6
    Rule 23(e)(2)(A)-(D) ...................................................................................5
    Rule 23(e)(2)(B).......................................................................................6, 7
    Rule 23(e)(2)(C).........................................................................................7
    Rule 23(e)(2)(C)(ii)-(iv).............................................................................11
    Rule 23(e)(2)(D).......................................................................................11
    Rule 23(e)(3)............................................................................................11

4817-9657-7215.v1

## I.    INTRODUCTION

Lead Plaintiffs City of Pontiac General Employees' Retirement System ("City of Pontiac"), Oklahoma Police Pension & Retirement System ("Oklahoma Police"), and City of Omaha Police & Fire Retirement System ("Omaha Police & Fire," and collectively, "Lead Plaintiffs") respectfully submit this memorandum in support of their motion for final approval of the Settlement of the claims in this Action against Camping World Holdings, Inc. ("Camping World" or the "Company"), Marcus A. Lemonis, Thomas F. Wolfe, Brent L. Moody, Stephen Adams, Crestview Partners II GP, L.P., Crestview Advisors, L.L.C., Andris A. Baltins, Brian P. Cassidy, Mary J. George, Daniel G. Kilpatrick, Howard A. Kosick, Jeffrey A. Marcus, K. Dillon Schickli, Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Credit Suisse Securities (USA) LLC, Robert W. Baird & Co. Incorporated, BMO Capital Markets Corp., KeyBanc Capital Markets Inc., Stephens Inc. and Wells Fargo Securities, LLC (collectively, "Defendants").[1]

The $12.5 million all-cash settlement is the result of Lead Plaintiffs' and Lead Counsel's diligent litigation and the parties' arm's-length settlement negotiations over the course of several months with the assistance of an experienced and well-respected mediator, Bill Baten.  Lead Plaintiffs and Lead Counsel believe the Settlement is a highly-favorable result for the Class under the circumstances before the Court and therefore merits approval.

This case has been vigorously litigated from its commencement.  Defendants have repeatedly maintained that Lead Plaintiffs could not adequately plead or prove the claims asserted.  Lead Counsel expended substantial effort in reaching the Settlement, including, having: conducted a thorough pre-filing investigation that included analysis of SEC filings, analyst reports, substantial

---

[1]    Capitalized terms used herein that are not otherwise defined shall have the meanings provided in the Settlement Agreement executed on March 12, 2020 (ECF No. 122) (the "Stipulation"). Citations are omitted and emphasis is added throughout unless otherwise noted.

media coverage, and shareholder communications, as well as interviews with potential witnesses; researched and analyzed the law pertinent to the claims and defenses; drafted detailed complaints; prepared comprehensive briefs in opposition to Defendants' motions to dismiss; monitored developments in the case law; consulted with an expert in the areas of loss causation and damages; analyzed available insurance to fund a settlement; exchanged mediation positions and settlement demands; and prepared for and participated in an all-day mediation before Mr. Baten, which included presentations by counsel for the parties.

The $12.5 million Settlement provides the Class with a certain and substantial recovery without the risk, delay, and expense of continued litigation. Lead Counsel, who are well-respected and have substantial experience in prosecuting securities class actions, have concluded that the Settlement is a very good result for the Class. This conclusion is based on their diligent prosecution of the Action and all the circumstances present here, including the substantial risks, expenses, and uncertainties of continued litigation, the relative strengths and weaknesses of the claims and defenses, the legal and factual issues presented, the likelihood of obtaining a larger judgment against the Defendants after trial and past experience in litigating similar actions. Even if Lead Plaintiffs were successful at trial and on post-trial appeals, the uncertain recovery from the Defendants would have been years down the road. The Lead Plaintiffs, who have a significant stake in the Action, also believe that the Settlement is in the best interest of the Class.

For all the reasons discussed herein and in the concurrently-filed declarations, Lead Plaintiffs respectfully submit that the Settlement should be approved by the Court. Likewise, the Plan of Allocation, which was developed by Lead Counsel and their damages consultant based on an assessment of the damages theories asserted in the Action, is fair, reasonable, and adequate, and should be approved by the Court.

4817-9657-7215.v1

## II.     SUMMARY OF THE LITIGATION

The underlying facts are summarized in the memorandum in support of preliminary approval (ECF No. 120 at 2) and in the accompanying Declarations of James E. Barz and Thomas G. Hoffman, Jr. in support of: (i) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (ii) Lead Counsel's Motion for an Award of Attorneys' Fees, Expenses, and Awards to Plaintiffs Pursuant to the Private Securities Litigation Reform Act of 1995 ("Barz Decl." and "Hoffman Decl.").  Lead Plaintiffs provide a brief summary here.

Lead Plaintiffs allege violations of §§11, 12(a)(2) and 15 of the Securities Act of 1933 and §§10(b) and 20(a) of the Securities Exchange Act of 1934, claiming that Defendants made false and misleading statements that: (i) misrepresented Camping World's financial results, the effectiveness of its internal controls and disclosure controls, and its compliance with Generally Accepted Accounting Principles; and (ii) misleadingly touted the integration and rollout of its Gander Mountain stores acquisition, which allegedly concealed significant integration and operational failures.[2]  Lead Plaintiffs allege that the Company's stock price was artificially inflated as a result of Defendants' allegedly false and misleading statements.  On May 17, 2019, Defendants filed two comprehensive motions to dismiss – one by the Camping World and Crestview Defendants (ECF No. 100), and one by the Underwriter Defendants (ECF No. 102).  Lead Plaintiffs persuasively rebutted each of the Defendants' arguments in their opposition briefs.  ECF Nos. 109-110. Defendants filed their replies on August 15, 2019.  ECF Nos. 112-113.

On October 17, 2019, in an effort to conserve judicial resources and wasting insurance proceeds, certain of the parties participated in a full-day mediation session with an experienced

---

[2]     On March 12, 2020, Lead Plaintiffs filed the operative Amended Consolidated Complaint for Violations of the Federal Securities Laws, which extended the Class Period to cover claims arising from Camping World's initial public offering and added Daniel Geis as a plaintiff.  ECF No. 117.

- 3 -

mediator, Bill Baten. Prior to that mediation, Lead Plaintiffs prepared and provided to the mediator and participating parties materials detailing their positions on liability and damages. During the mediation, counsel for the parties further detailed their positions in joint-session presentations and participated in breakout sessions with Mr. Baten. Although the mediation ended with the parties too far apart to reach an agreement, negotiations continued for nearly two additional months, until Mr. Baten presented a mediator's proposal that was agreed to on December 6, 2019. The parties then negotiated the Stipulation and supporting exhibits, and executed them on March 12, 2020. ECF No. 122. This Court preliminarily approved the Settlement on April 7, 2020. ECF No. 126.

## III.  LEAD PLAINTIFFS HAVE PROVIDED NOTICE IN COMPLIANCE WITH RULE 23 AND DUE PROCESS

In granting preliminary approval of the Settlement, the Court approved Lead Plaintiffs' proposed distribution and mailing of the Notice, which included all the information required by Rule 23 and the PSLRA. *See* ECF No. 126, ¶8; ECF No. 120 at 13-15. Pursuant to this Court's order, and in compliance with Rule 23, Lead Plaintiffs have provided "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

As detailed in the accompanying declaration of the Claims Administrator, A.B. Data, as of June 26, 2020, more than 67,300 copies of the Notice Packet have been mailed to potential Class Members, brokers, and nominees. *See* Declaration of Eric A. Nordskog, dated June 26, 2020, ¶9 ("A.B. Data Decl."), submitted herewith. In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire* on April 27, 2020. *Id.*, ¶10. The Claims Administrator has also established a dedicated Settlement website, www.CampingWorldSecuritiesSettlement.com, to provide potential Class Members with information concerning the Settlement and access to copies of the Notice, Claim Form, Stipulation, Preliminary Approval Order, and other case-related documents. *Id.*, ¶12. This combination of

- 4 -

individual notice by first-class mail to Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire, and set forth on internet websites, constitutes "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## IV.   ARGUMENT

### A.   The Proposed Settlement Warrants Final Approval

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Under recently-amended Rule 23, a district court may approve of a class action settlement upon finding "that it is fair, reasonable, and adequate" after considering whether: (1) the class representatives and counsel adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account, among other things, the costs, risks, and delay of trial and appeal; and (4) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D). Prior to the Rule 23 amendment, the Seventh Circuit provided the following factors for district courts to consider:

> the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).[3]

Given the $12.5 million all-cash recovery obtained, the risks faced, and the extensive arm's-length negotiations and efforts of Lead Plaintiffs and Lead Counsel that led to the agreement, the Settlement satisfies each of the Rule 23(e)(2) and *Accretive* factors.

---

[3]   The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure indicate that the four factors provided in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."

4817-9657-7215.v1

1.      **Lead Plaintiffs and Lead Counsel Adequately Represented the
        Class**

Rule 23(e)(2) advises district courts to consider whether "the class representatives and class

counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).

As detailed herein and in the concurrently filed declarations and Memorandum of Points and

Authorities in Support of Lead Counsel's Motion for an Award of Attorneys' Fees, Expenses, and

Awards to Plaintiffs Pursuant to the Private Securities Litigation Reform Act of 1995 ("Fee

Memorandum"), both Lead Plaintiffs and Lead Counsel have adequately represented the Class by

diligently prosecuting this Action and securing the favorable Settlement.  *See also infra*, §IV.A.2.

Lead Plaintiffs have actively overseen and participated in this Action by, for example, reviewing draft

filings, and engaging in conferences with counsel on strategy and decisions regarding the litigation and

settlement.  *See* Declaration of Sheldon Albritton on behalf of City of Pontiac ("City of Pontiac

Decl."), ¶3; Declaration of Ginger Sigler on behalf of Oklahoma Police ("Oklahoma Police Decl."),

¶3; Declaration of James Sklenar on behalf of Omaha Police & Fire ("Omaha Police & Fire Decl."),

¶3.  Lead Plaintiffs also retained highly-experienced and well-respected counsel, who have zealously

prosecuted the Action from investigation through negotiations, motion to dismiss briefing, mediation

and Settlement.  *See* Barz Decl., ¶¶6-7, 18-19; Hoffman Decl., ¶¶13-21, 61-66.  This diligent and

adequate representation of the Class supports final approval.  *See* Fed. R. Civ. P. 23(e)(2)(A).

2.      **The Settlement Resulted from Extensive Arm's-Length
        Negotiations**

Rule 23(e)(2) next advises district courts to consider whether the settlement was "negotiated

at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).

Here, the Settling Parties reached the Settlement only after protracted, arm's-length

negotiations between experienced counsel, including an all-day mediation with Bill Baten, an

experienced mediator. At the time of the October 17, 2019 mediation, Lead Plaintiffs and Lead Counsel were well-informed of the strengths and weaknesses of the claims, though, for example:

- Lead Counsel's extensive investigation in connection with preparing Lead Plaintiffs' detailed complaint based on a review and analysis of SEC filings, substantial media and analyst reports, press releases and other publicly-available information, shareholder communications, interviews with potential witnesses, and relevant case law and authorities (*see* Barz Decl., ¶6; Hoffman Decl., ¶13);

- full briefing on the motions to dismiss (Hoffman Decl., ¶¶16-17); and review of Defendants' insurance policies; and

- the exchange of mediation positions and settlement demands that detailed the parties' arguments on liability and damages (*see* Hoffman Decl., ¶¶19-20; Barz Decl., ¶¶5-6).

The mediation itself involved the further exchange of the parties' respective views on Lead Plaintiffs' claims, Defendants' defenses, and issues related to damages. *See id.* The negotiations were hard-fought and the parties were unable to reach an agreement at the end of the all-day session, though they continued negotiations through Mr. Baten. Nearly two months later, the parties reached an agreement in principle to settle the litigation for $12.5 million. Hoffman Decl., ¶21. This contentious, well-informed, arm's-length negotiation process supports final approval. *See Accretive*, 773 F.3d at 864 (affirming approval of securities class action settlement before a ruling on the "contentiously litigated" motion to dismiss where "[t]he settlement was reached through extensive arm's-length negotiations with an experienced third-party mediator"); *In re Career Educ. Corp. Sec. Litig.*, No. 03 C 8884, 2008 WL 8666579, at *3 (N.D. Ill. June 26, 2008) (approving settlement that "resulted from arms-length negotiations and voluntary mediation between experienced counsel").

### 3. The Settlement Provides a Favorable Benefit to the Class Considering the Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2) next advises district courts to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C). The Seventh Circuit has likewise instructed courts to consider: (1) the strength

of the case for plaintiffs on the merits, balanced against the extent of settlement offer; and (2) the complexity, length, and expense of further litigation. *See Accretive*, 773 F.3d at 863-64. The $12.5 million cash recovery obtained for the benefit of the Class provides highly-favorable relief considering the legal, factual, and practical risks of continued litigation against the Defendants. And, like in *Accretive*, the "stage of the proceedings and the amount of discovery completed" weighs in favor of approval because "[a]lthough formal discovery had not commenced, [Lead Plaintiffs] had access to extensive public documents," 773 F.3d at 864, as well as information from potential witnesses and the mediation exchange of information. *See* Barz Decl., ¶6; Hoffman Decl., ¶¶13-20; *see also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587 (N.D. Ill. 2011) (approving settlement prior to discovery and noting that the "'label of "discovery" [either formal or informal] is not what matters'" . . . "[i]nstead, 'the pertinent inquiry is what facts and information have been provided'").[4]

### a.      Risks to Establishing Liability

While Lead Plaintiffs believe that they had assembled a strong case against the Defendants for liability, a favorable ruling on the motions to dismiss or a finding in favor of the class at trial was never assured. Lead Plaintiffs would need to prove to the satisfaction of the Court and jury that Defendants made false and misleading statements that were material to a reasonable investor. Defendants have adamantly denied liability. *See* ECF Nos. 101, 102, 112, 113 (Defendants' motions to dismiss).

First, Defendants have argued that Lead Plaintiffs' alleged misstatements regarding the revenue restatements and internal controls were not actionable because they were either immaterial or a matter of opinion. *See* ECF No. 101 at 13-18. Defendants further argued that their statements about the Gander Mountain acquisition were not actionable because: (i) the confidential witness

---

[4]      Prior to executing the Stipulation, Lead Counsel also reviewed information produced by certain defendants that those defendants intended to introduce at trial to disprove Lead Plaintiffs' challenges to the Gander Mountain statements. Hoffman Decl., ¶27.

accounts did not support falsity; (ii) the alleged false statements were forward-looking statements protected by the safe-harbor provisions of the PSLRA; and (iii) the alleged misstatements amounted to puffery or opinion. *See id.* at 18-25.

Second, the Camping World Defendants maintained that Lead Plaintiffs could not establish scienter for the Exchange Act claims, arguing, for example, that the stock sales, confidential witnesses and other allegations were insufficient to state a claim. *See id*. at 25-32. And third, the Underwriter Defendants argued that they were entitled to "due diligence" and reasonable reliance defenses because Lead Plaintiffs could not prove adequate "red flags" to negate the Underwriter Defendants' reliance on expertise statements. ECF No. 102-1 at 12-16.

### b. Risks Related to Proving Loss Causation and Damages

Even if Lead Plaintiffs established liability, they faced further risks and uncertainty regarding proof of loss causation and damages. Defendants have argued that Lead Plaintiffs could not establish loss causation on their Exchange Act claims (or negate a "negative causation" defense on their Securities Act claims) with respect to the alleged financial and internal controls misstatements due to the lack of a significant stock price drop after the corrective disclosures of the alleged fraud. *See* ECF No. 101 at 33-34, 38-39. While Lead Plaintiffs have pled a leakage theory, which accounts for the absence of a drop directly after the corrective disclosures, proving such a theory presents litigation risks. Hoffman Decl., ¶41. Defendants likewise argued that Lead Plaintiffs could not prove loss causation with respect to the Gander Mountain statements. ECF No. 101 at 34-35.

Assuming Lead Plaintiffs prevailed in establishing loss causation at the pleading stage, Defendants would retain experts to opine that certain (if not all) of the alleged losses did not correlate to damages attributable to the alleged misstatements, which could reduce or even eliminate recoverable damages. Although Lead Plaintiffs would retain experts to opine in support of Lead

- 9 -

Plaintiffs' causation and damages theories, there is no guarantee that this "battle of the experts" would result in a favorable outcome for the Class. Hoffman Decl., ¶¶43-44.

As set forth above, with conflicting arguments and evidence, there is no certainty that Lead Plaintiffs would prevail at trial (or appeal) on liability or damages. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) ("Securities fraud litigation is long, complex and uncertain."). Moreover, the likely "complexity, length, and expense of further litigation" would have been substantial, which weighs in favor of settling the claims. *Accretive*, 773 F.3d at 863. For example, to prove their claims against the Defendants, Lead Plaintiffs would need to negotiate for, obtain, and analyze voluminous additional documents from Defendants and non-parties, and Defendants in turn would seek documents from Lead Plaintiffs, and both sides would take numerous depositions. *See Schulte*, 805 F. Supp. 2d at 586 ("'The costs associated with discovery in complex class actions can be significant.'"). As discussed, each side could then retain experts, resulting in a "battle of the experts," which is a costly, uncertain, and difficult-to-predict endeavor. *See Accretive*, 773 F.3d at 863 (noting that calculating damages in a securities class action would have "resulted in a lengthy and expensive battle of the experts, with the costs of such a battle borne by the class – exactly the type of litigation the parties were hoping to avoid by settling"). Even if Lead Plaintiffs were able to win on every issue, the entire litigation process could span several years, with costs of defense reducing the available insurance.[5] *See* Barz Decl., ¶5; Hoffman Decl., ¶¶44-45.

In contrast, the $12.5 million settlement, at this juncture, results in a certain and favorable recovery, without the considerable risk, expense, and delay of fact and expert discovery, summary

---

[5]    Even a meritorious case can be lost at trial. *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc*., 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor). And even trial victory may not end the litigation. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (ordering new trial 13 years after case was commenced).

judgment motions, and trial and post-trial litigation. *See Reynolds v. Ben. Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now."); *Accretive*, 773 F.3d at 864 (affirming approval of $14 million settlement where the defendant "was prepared to vigorously contest the lawsuit, having raised potentially valid defenses[,] [defendant]'s motion to dismiss was fully briefed and argued before the district court[,] [f]urther litigation almost certainly would have involved complex and lengthy discovery and expert testimony[, and] [i]nsurance proceeds to fund a settlement or judgment were a limited, wasting asset, *i.e.*, further defense costs would have reduced those funds"). Consideration of this factor supports final approval.

### 4. The Settlement Is Fair and Adequate Under the Remaining Rule 23(e)(2) Factors

Rule 23(e)(2) also advises district courts to consider: (i) "the effectiveness of any proposed method of distributing relief to the class"; (ii) "the terms of any proposed award of attorney's fees, including timing of payment"; (iii) "any agreement required to be identified under Rule 23(e)(3)"; and (iv) whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv), (e)(2)(D). Each of these factors further weighs in favor of final approval.

### a. The Method for Distributing Relief Is Effective

As explained in §III above and §IV.B. below, the methods used in the notice and claims administration process are effective and they provide Class Members with the necessary information to receive their *pro rata* share of the Settlement. *See* A.B. Data Decl., Ex. A (Notice at 8-12). The claims process provides for straightforward cash payments based on the trading information provided, and it provides claimants with an opportunity to cure any deficiencies or request review by the Court of any denial of their claims. *Id.* This method for distributing relief in securities class actions is well-established and effective. *See infra*, §IV.B.

- 11 -

### b. Counsel's Fees Are Reasonable

As detailed in the Fee Memorandum, the proposed attorneys' fees of 30% of the Settlement Fund plus litigation costs, charges and expenses, are reasonable in light of the efforts of Lead Counsel, the contingent nature of their representation, and the risks in the litigation. Since this is not a "claims made" settlement, the entire Net Settlement Fund will be distributed to Class Members until it is no longer economically feasible, so there is no risk that counsel will be paid but Class Members will not. *Cf. Eubank v. Pella Corp.*, 753 F.3d 718, 726-27 (7th Cir. 2014) (rejecting settlement where attorneys would receive fees based on inflated settlement value, as defendants were likely to pay only a fraction of the purported settlement value to the class).

### c. Settlement-Related Agreements

In addition to the Stipulation, the Settling Parties entered into a confidential Supplemental Agreement that establishes the conditions under which Defendants would be able to terminate the Settlement based on whether requests for exclusion from the Class reach a specified threshold. *See* Stipulation, ¶8.4. This type of agreement is standard in securities class actions. *See, e.g.*, *Rubinstein v. Gonzalez*, No. 1:14-cv-09465, Stipulation of Settlement, ECF No. 274-1 at ¶8.3 (N.D. Ill. June 19, 2019). Lead Plaintiffs and the Defendants have no other agreements with each other.

### d. The Settlement Treats Class Members Equitably

Under the Plan of Allocation, eligible claimants will receive their *pro rata* share of the recovery based on, among other things, the number of shares purchased, when the shares were purchased, and whether they were sold or held. A.B. Data Decl., Ex. A (Notice at 8-12); Hoffman Decl., ¶¶52-57. The Recognized Claims of claimants with both Securities Act Recognized Losses and Exchange Act Recognized Losses in connection with their purchases during the Class Period will be valued at the larger of their Securities Act Recognized Loss Amounts or their Exchange Act Recognized Loss Amounts. Lead Plaintiffs will receive the same type of *pro rata* recovery (based

- 12 -

on their Recognized Claims as calculated under the Plan of Allocation) as all other similarly situated Camping World share purchasers. Thus, the Settlement treats Class Members equitably.

### 5. The Endorsement of Lead Counsel and the Reaction of the Class Favor Approval

In addition to the Rule 23(e)(2) factors, the Seventh Circuit has noted that the "opinion of competent counsel," the "amount of opposition to the settlement" and "the reaction of members of the class to the settlement" are also relevant considerations. *See Accretive*, 773 F.3d at 863.

Here, the settled claims have been litigated and settled by experienced and competent counsel on both sides of the case. Lead Counsel are well known for their experience and success in complex class action litigation and have many years of experience in litigating securities class actions. *See* Barz Decl., ¶¶18-19; Hoffman Decl., ¶¶65-66. Based on their extensive experience and expertise, Lead Counsel have determined that the Settlement is in the best interest of the Class after weighing the substantial benefits of the Settlement against the numerous obstacles to a better recovery after continued litigation. *See* Barz Decl., ¶8; Hoffman Decl., ¶¶7, 79. This endorsement favors final approval. *See Schulte*, 805 F. Supp. 2d at 586-87 (holding opinion of counsel with "extensive experience" that the settlement was beneficial to the class and met the requirements of Rule 23 "supports [the court's] approval of the Settlement").

Moreover, as discussed in §III above, the Claims Administrator has sent notice to tens of thousands of potential Class Members in accordance with the Preliminary Approval Order. While the deadline for the Class Members to exclude themselves or object is July 15, 2020, to date no objections and no requests for exclusion have been received.[6] A.B. Data Decl., ¶¶13-14. Lead

---

[6] Of course, the mere existence of objections or requests for exclusion does not preclude approval of the agreement. *Accretive*, 773 F.3d 859 (affirming settlement approval over objection); *Schulte*, 805 F. Supp. 2d 560 (approving settlement over 10 objections); *Rubinstein v. Gonzalez*, No. 1:14-cv-09465, Order, ECF No. 297 (N.D. Ill. Oct. 22, 2019) (approving settlement with 10 requests for exclusion). Lead Plaintiffs will file reply papers on July 29, 2020 that will address any requests for exclusion or objections received.

Plaintiffs are Class Members with significant losses who participated in and oversaw the Action, and they endorse the Settlement. *See* City of Pontiac Decl., ¶4; Oklahoma Police Decl., ¶4; Omaha Police & Fire Decl., ¶4. This favorable reaction by the Class also supports final approval.

Thus, each Rule 23(e)(2) and *Accretive* factor is satisfied. Lead Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and request that the Court grant final approval.

### B. The Plan of Allocation Warrants Final Approval

Lead Plaintiffs also seek approval of the Plan of Allocation, which is set forth in full in the Notice. *See* A.B. Data Decl., Ex. A. Assessment of a plan of allocation under Rule 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair and reasonable. *See Retsky*, 2001 WL 1568856, at *3.

Here, the Plan of Allocation was developed by Lead Counsel in conjunction with their damages consultant and is an equitable method of distributing the Net Settlement Fund to Authorized Claimants. The Plan of Allocation distributes the Net Settlement Fund on a *pro rata* basis, as determined by the ratio that an Authorized Claimant's Recognized Claim bears to the total Recognized Claims of all Authorized Claimants. *See* A.B. Data Decl., Ex. A (Notice at ¶47). Calculation of an Authorized Claimant's Recognized Claim will depend upon several factors, including when the shares were held, purchased, or sold. *See id.* This method of distributing settlement funds is fair, reasonable, and adequate. *See, e.g.*, *Rubinstein v. Gonzalez*, No. 1:14-cv-09465, Stipulation of Settlement, ECF No. 274-1 (N.D. Ill. June 19, 2019) (setting forth similar plan of allocation); *Rubinstein v. Gonzalez*, No. 1:14-cv-09465, Order, ECF No. 296 (N.D. Ill. Oct. 22, 2019) (approving plan of allocation); *In re Groupon, Inc. Sec. Litig.*, No. 1:12-cv-02450, Notice, ECF No. 355-2 at 5-7 (N.D. Ill. Mar. 25, 2016) (setting forth similar plan of allocation); *In re Groupon, Inc. Sec. Litig.*, No. 1:12-cv-02450, Order, ECF No. 368 (N.D. Ill. July 13, 2016) (approving plan of allocation); Hoffman Decl., ¶¶52-57.

- 14 -

C.    **Class Certification Remains Warranted**

The Court previously, for settlement purposes only, preliminarily: (1) approved this Action as a class action pursuant Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and (2) appointed Lead Plaintiffs as class representatives and Lead Counsel as class counsel.  ECF No. 126, ¶¶2-5; *see also* ECF No. 120 at 10-13 (showing that the Class satisfies all the requirements of Rules 23(a) and (b)(3).  None of the facts regarding certification of the Class have changed since Lead Plaintiffs submitted their motion for preliminary approval, and there has been no objection to certification.  Accordingly, Lead Plaintiffs respectfully request that the Court grant final certification of the Class and appoint Lead Plaintiffs as class representatives and Lead Counsel as class counsel, for settlement purposes only, pursuant to Rules 23(a) and (b)(3).

V.    **CONCLUSION**

For the reasons stated in this memorandum, in the accompanying declarations, and in the Fee Memorandum, Lead Plaintiffs respectfully request that the Court approve the Settlement and the Plan of Allocation as fair, reasonable, and adequate, and certify the Class.

DATED:  July 1, 2020                              Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
BRIAN E. COCHRAN (IL Bar # 6329016)
FRANK A. RICHTER (IL Bar # 6310011)


                                                          s/ James E. Barz
                                              JAMES E. BARZ

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
jbarz@rgrdlaw.com
bcochran@rgrdlaw.com
frichter@rgrdlaw.com

- 15 -

ROBBINS GELLER RUDMAN
    & DOWD LLP
ELLEN GUSIKOFF STEWART (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

*Counsel for City of Pontiac General Employees'*
*Retirement System, Oklahoma Police Pension &*
*Retirement System, Plumbers & Steamfitters*
*Local Union #486 Pension Fund and Lead*
*Counsel for the Class*

DATED:  July 1, 2020        LABATON SUCHAROW LLP
                            THOMAS A. DUBBS (*pro hac vice*)
                            MICHAEL P. CANTY (*pro hac vice*)
                            THOMAS G. HOFFMAN, JR. (*pro hac vice*)
                            MARISA N. DEMATO (*pro hac vice*)


                                 s/Thomas G. Hoffman, Jr.
                            _____
                                THOMAS G. HOFFMAN, JR.

                            140 Broadway
                            New York, New York 10005
                            Telephone:  212/907-0700
                            212/818-0477 (fax)
                            tdubbs@labaton.com
                            mcanty@labaton.com
                            thoffman@labaton.com
                            mdemato@labaton.com

                            *Counsel for the City of Omaha Police & Fire*
                            *Retirement System and Lead Counsel for the*
                            *Class*

                            ASHERKELLY
                            CYNTHIA J. BILLINGS-DUNN
                            25800 Northwestern Highway, Suite 1100
                            Southfield, MI  48075
                            Telephone:  248/746-2710
                            248/747-2809 (fax)

- 16 -

*Additional Counsel for the City of Pontiac*
*General Employees' Retirement System*

4817-9657-7215.v1

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2020, I caused the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION to be served electronically through the Court's ECF system upon all registered ECF participants.


s/ James E. Barz
JAMES E. BARZ